SUPERIOR COURT FOR THE
DISTRICT OF COLUMBIA
Civil Division

_____
                                                                    )
**PAMELA LEVINSON**                           )
5801 Bradley Blvd.                                   )
Bethesda, MD 20814                              )
(301) 758-4180                                         )
                                                                    )
      **Plaintiff**,                                    )     Civil Action No. 2013 CA 000515 B
                                                                    )
      v.                                                    )     **SECOND AMENDED**
                                                                    )     **COMPLAINT**
                                                                    )
**WILMER CUTLER PICKERING HALE AND**  )
**DORR LLP**                                            )
1875 Pennsylvania Ave., NW                 )     **JURY TRIAL DEMANDED**
Washington, DC 20006                          )
(202) 663-6000                                         )
                                                                    )
      **Defendant**.                                 )
_____ )

## OVERVIEW

1. Plaintiff Pamela Levinson ("Plaintiff" or "Ms. Levinson") brings this action against Defendant law firm Wilmer Cutler Pickering Hale and Dorr LLP ("Defendant" or "WilmerHale" or "the Firm") to redress discrimination, retaliation and interference with rights secured by the District of Columbia Family and Medical Leave Act, D.C. Code §§ 32-501 *et seq*. ("DCFMLA"), the District of Columbia Human Rights Act, D.C. Code §§ 2-1401.01 *et seq*. ("DCHRA"), and related common law.

2. Ms. Levinson's work was characterized as "excellent" and "impressive" during her seven years of service to WilmerHale. Despite that fact, Ms. Levinson was terminated by Defendant while on protected adoption leave, and denied salary increases and bonuses commensurate with the level of her performance.

3.   WilmerHale's proffered reasons for terminating Ms. Levinson are pretextual as evidenced by the timing of her termination and WilmerHale's disregard for Ms. Levinson's impressive record throughout her employment with Defendant.

4.   WilmerHale actually terminated Ms. Levinson because she attempted to exercise her right to take protected adoption leave and because of her gender, age and family responsibilities.

5.   Furthermore, WilmerHale denied Ms. Levinson salary increases and adequate bonuses because of her gender, age and family responsibilities.

## JURISDICTION

6.   This Court has subject-matter jurisdiction over Ms. Levinson's claims pursuant to D.C. Code § 11-921.

7.   This Court may exercise personal jurisdiction over WilmerHale pursuant to D.C. Code § 13-423.

8.   WilmerHale transacts business in the District of Columbia.

9.   Ms. Levinson was an employee of WilmerHale in the District of Columbia at the time that she was denied her rightful compensation. WilmerHale wrongfully terminated Ms. Levinson while she was on protected leave.

## THE PARTIES

10.   Ms. Levinson is a 53-year-old woman currently residing at 5801 Bradley Boulevard, Bethesda, Maryland 20814. WilmerHale hired Ms. Levinson in September 2004. Ms. Levinson took four and a half months of adoption/maternity leave to adopt a 22 month-old child from China beginning December 9, 2011. WilmerHale terminated Ms. Levinson in February 2012 while she was still on leave.

11.   Ms. Levinson was at all relevant times an eligible employee of WilmerHale within the meaning of the DCFMLA and the DCHRA.

12.     WilmerHale is a law firm with over 1,000 lawyers and 12 offices in the United States, Europe and Asia.  WilmerHale is an employer within the meaning of the DCFMLA and the DCHRA and has its principal place of business at 1875 Pennsylvania Avenue, NW, Washington, DC 20006.

**FACTS**

**I.     MS. LEVINSON'S BACKGROUND**

14.     Throughout her adult life, Ms. Levinson has consistently excelled in her endeavors both academically and professionally.  After achieving high academic honors in high school, Ms. Levinson continued at Macalester College, graduating in 1981, magna cum laude with a Bachelor of Arts degree in Sociology.

15.     After college, Ms. Levinson worked as a fundraiser for a non-profit organization, was Executive Vice President of an international film distribution company, and ran her own businesses in home construction and antiques.

16.     In 1998, Ms. Levinson attended the University of Miami School of Law, graduating first in her class *summa cum laude* in 2001.  As a result, she earned membership in the school's chapter of the Order of the Coif.  During law school, Ms. Levinson was a member of the *University of Miami Law Review* and the recipient of numerous book awards.

17.     Upon graduating from law school, Ms. Levinson served as a law clerk to the Honorable Adalberto Jordan of the US District Court of the Southern District of Florida (now a judge of the United States Court of Appeals for the 11th Circuit).  After completing her clerkship, Ms. Levinson spent nearly two years as an associate in the Miami offices of the law firm Akerman Senterfitt, LLP.

3

## II.     MS. LEVINSON'S IMPRESSIVE PERFORMANCE RECORD AT WILMERHALE

18.     Ms. Levinson transitioned to WilmerHale in September 2004, where she assumed the title of fourth-year associate.  Ms. Levinson was 45-years-old when she began her employment with WilmerHale.

19.     Like all attorneys who joined WilmerHale, Ms. Levinson participated in the "New Associates Working Group," a training program comprised of lectures, seminars, and workshops aimed at exposing attorneys to the foundational aspects of the profession of law.  Ms. Levinson graduated from the training program in May 2005.  Throughout her tenure in the program, Ms. Levinson received predominantly positive performance reviews from her program evaluators.  One midpoint evaluator, Ted Millspaugh, described Ms. Levinson as "great – very diligent and helpful, both on the research side and the advice side."  Colin Rushing evaluated Ms. Levinson at graduation and stated that he was "very impressed" with her, citing how she "jumps right into cases, rolls up her sleeves, and is quite organized. . . . [S]he really went the extra mile in less than ideal circumstances."

20.     In 2006, WilmerHale placed Ms. Levinson on the Novartis-Trileptal Investigation team.  As part of her spring 2006 mid-year review, Ms. Levinson received "solid to high marks from all evaluators."  One evaluator, Karen Green ("Ms. Green"), commented that she was "impressed with [Ms. Levinson's] initiative, analytical abilities, and drive."  Ms. Levinson's fall 2006 reviews were similarly positive.  Lillian Potter stated in her evaluation that Ms. Levinson "did an excellent job all around . . . She was prepared, organized, thorough, and really helped us in a tight spot."  The evaluating partners recommended that Ms. Levinson be given more responsibility and opportunities to build her legal repertoire, including "the opportunity to take on more senior responsibility for litigation tasks; she clearly can handle it."

4

21. The following year, Ms. Levinson's spring 2007 evaluations were "laced with superlatives, describing her work as 'excellent,' 'very impressive,' and 'top-quality.' Partners and counsel praised [Ms. Levinson's] diligence, hard work, communication skills and initiative." Ms. Levinson's fall 2007 evaluators applauded her as a "critical member" of the Novartis-Trileptal team as a result of her successful supervision of staff attorneys and paralegals, "extremely good" memo writing, and competence in document oversight. Ms. Levinson "earned the gratitude and respect of the lawyers with whom she work[ed]."

22. In recognition of her "hard work and many contributions to the work of the firm," WilmerHale promoted Ms. Levinson from associate to counsel on January 1, 2008.

23. As counsel, Ms. Levinson continued to manage the large document review and production team on the Novartis-Trileptal matter for the Investigations and Criminal Litigation Group ("ICL"). Her mentor, Randolph Moss ("Mr. Moss"), summarized her 2008 spring evaluations and stated that Ms. Levinson did an "extraordinary job managing the document production process." She "developed a thoroughgoing grasp of the key issues," made "invaluable contributions," demonstrated "strong interpersonal skills," and had "well-organized, clear, and concise" written work. Reviewing partners continued to recommend that Ms. Levinson acquire even more experience and assume leadership roles.

24. In the fall of 2008, Ms. Levinson received a Partnership Prospects Evaluation. Despite the fact that Ms. Levinson "excelled in [her] position" and that one of the partners who worked closest with her recommended her for promotion into the partnership, Ms. Levinson's male mentor, Mr. Moss, revealed in the evaluation that Ms. Levinson would not be considered for partnership.

25. Despite receiving this unexpected and disheartening news, Ms. Levinson continued to push forward, performing just as well if not better in 2009 than she had previously.

5

Ms. Levinson's 2009 spring and fall evaluations were unanimously positive. The evaluations noted that Ms. Levinson was "highly responsive and efficient" and "consistently added value to the work of the team." One partner, Emily Schulman, noted that Ms. Levinson "could not be more responsive, diligent, efficient or productive." Another partner, Ms. Green, stated that Ms. Levinson had "met all of my expectations for a lawyer of her seniority." All three of Ms. Levinson's reviewing partners recommended her for promotion to Special Counsel.

26. Despite these recommendations, WilmerHale did not promote Ms. Levinson to Special Counsel. Instead, in direct contravention of her reviewing partners' recommendations, Defendant told Ms. Levinson that her long term prospects at the Firm were limited, froze her base salary and reduced her bonus award to $0 following her 2009 performance.

27. Although WilmerHale had numerous partner promotions during Ms. Levinson's tenure, upon information and belief, there has only been one female attorney promoted to partner while over the age of 50 during the relevant time period. In fact, the vast majority of individuals promoted to partner and/or Special Counsel at WilmerHale were below the age of 40 at the time of their promotion and, upon information and belief, there has not been a single instance during the relevant time period in which a person over the age of 50 has been promoted to partner or Special Counsel in the litigation department.

28. In her 2010 mid-year reviews, Ms. Levinson received "very good" evaluations and was praised for her commitment, dedication, and attention to detail. Of particular importance, her management skills were described as "exemplary." Ms. Levinson was also recognized for her "excellent leadership skills" and "the degree to which she was willing to recognize the contributions of the associates working for her." Four of five evaluating partners recommended Ms. Levinson for promotion to Special Counsel based on her performance, commending her "management of the team and the work and her development of strategy." The

single evaluating partner who did not make such a recommendation was one who had only worked with Ms. Levinson minimally on a pro bono project. Nonetheless, WilmerHale informed Ms. Levinson that her future prospects at the Firm were "not promising."

29. In her 2010 year-end reviews, WilmerHale continued to praise Ms. Levinson for her commitment to her matters and clients and for being an excellent case manager. WilmerHale gave Ms. Levinson positive feedback for her leadership and mentoring of associates and the Firm recognized her for having taken a "keen interest" in their development. Despite these recommendations, WilmerHale declined to promote Ms. Levinson to Special Counsel for a second straight year and maintained a freeze on her base salary.

30. In late 2010, WilmerHale assigned Ms. Levinson to a pharmaceutical off-label marketing matter due to her significant experience in the subject area. The partner overseeing the matter, who had worked with her previously in an attempt to bring business to the firm, mentioned that he was excited to have Ms. Levinson on the case.

31. Shortly thereafter, however, Ms. Levinson was informed by the practice manager who had originally assigned Ms. Levinson to the new matter that she had been removed from the assignment. The practice manager explained that the partner overseeing the matter was informed by Steve Jonas, head of the ICL group, that the firm was "trying to get rid of" Ms. Levinson and wanted to employ the assistance of someone other than Ms. Levinson who actually had a "future at the firm." Subsequently, WilmerHale replaced Ms. Levinson on the matter with a female attorney in her early thirties, who was based out of the Boston office.

32. Soon after, Ms. Levinson was assigned to a matter in the Financial Institutions Group, which required bi-weekly travel to Switzerland for 10 months. During this time, Ms. Levinson reported to male partner Matthew Holmwood ("Mr. Holmwood"), who often discounted her achievements and excluded her from important meetings. Ms. Levinson was

one of the few managing attorneys on the team, yet during a full team meeting, Mr. Holmwood directed associates, paralegals and other staff to bring any questions or concerns that they might have only to him, male partner Russell Bruemer and male counsel Michael Vagnucci.

33.     Ms. Levinson was not the only female on the team to be discounted because of her gender. When a colleague of hers prepared to leave Switzerland after her first trip working with the team, she expressed to Ms. Levinson her reluctance to return to the team because of the treatment that she had received from male leadership. Despite working under less-than-ideal circumstances, Ms. Levinson earned a good mid-year evaluation in April of 2011 from Mr. Holmwood, which commended her "terrific organizational skills, commitment, thoroughness, and focus on client goals." The overall assessment for Ms. Levinson was "Performance at a High Level."

### III.    MS. LEVINSON TAKES PROTECTED ADOPTION LEAVE AND RECEIVES A REDUCED BONUS AWARD WHILE ON LEAVE

34.     In fall 2011, Ms. Levinson prepared to adopt a 22 month-old child from China. She notified WilmerHale's human resources department in October 2011 that she would be taking adoption leave in December. WilmerHale provides 4.5 months of paid adoption leave, equivalent to its maternity leave policy, and up to one year of additional unpaid leave upon request. WilmerHale's adoption leave policy states that the Firm does not expect a leave of the full 18 week allotment to affect advancement. The paid adoption leave was scheduled to end on April 16, 2012 and Ms. Levinson planned on returning to work shortly following her leave.

35.     Ms. Levinson began her adoption leave on December 9, 2011. While she was out on adoption leave, Ms. Levinson's mentor-partner never contacted her about year-end evaluations, despite it being common practice for mentors to do so.

36.     In January 2012, while still on leave, Ms. Levinson learned that her 2011 bonus had been reduced to $22,000. Ms. Levinson calculated that she should have received a bonus of

approximately $35,000 to $50,000 after her billable hours were annualized and prorated to account for her adoption leave.

### IV. MS. LEVINSON IS TERMINATED WHILE ON ADOPTION LEAVE

37. In approximately January 2012, Ms. Levinson received an email advising individuals who were out of the office when bonus letters were distributed to collect their bonus letters from human resources. Ms. Levinson returned to WilmerHale's office with her adopted daughter to pick up her bonus letter in February 2012. While she was at the office, a human resources secretary directed Ms. Levinson to retrieve her letter from Craig Goldblatt ("Mr. Goldblatt"), who was known at WilmerHale for delivering career-altering news to attorneys. When Ms. Levinson arrived at Mr. Goldblatt's office, he handed her her bonus letter and her 2011 year-end evaluation. Mr. Goldblatt stated that Ms. Levinson would not understand her bonus without the evaluation. Despite Ms. Levinson's positive track record mentoring and supporting junior attorneys, the evaluation alleged that she had "real challenges with respect to her management of the more junior lawyers on [her] matter." The evaluation supposedly relied on anonymous comments from just three out of 26 employees that Ms. Levinson supervised that year. After handing Ms. Levinson the evaluation, Mr. Goldblatt terminated Ms. Levinson, informing her that she would be expected to "transition to another job."

38. In sum, despite her strong performance while at WilmerHale, Ms. Levinson had her base salary frozen in 2009, her bonuses reduced thereafter and promotions for which she was recommended denied because of her gender, age and family responsibilities. WilmerHale's discriminatory treatment of Ms. Levinson culminated in her termination while on protected leave in violation of District of Columbia law. The impact of WilmerHale's deliberate and reckless conduct against Ms. Levinson is substantial. Ms. Levinson is now unemployed shortly

after bringing a new child into her family. WilmerHale's actions have caused clear economic harm to Ms. Levinson along with substantial emotional damage.

### COUNT I – VIOLATION OF THE DISTRICT OF COLUMBIA FAMILY AND MEDICAL LEAVE ACT

39. Plaintiff incorporates and re-alleges paragraphs 1 through 38 of the Complaint as if fully set forth herein.

40. By requesting and taking DCFMLA leave, Plaintiff attempted to avail herself of protected rights and benefits under the DCFMLA, including the right to retain any employment benefit or seniority accrued prior to going on protected leave and the right to be restored to a position of employment equivalent to the position she held prior to going on protected leave (i.e., a position comprised of equivalent employment benefits, pay, seniority, and other terms and conditions of employment). Plaintiff also attempted to avail herself of the right under the DCFMLA to be free from adverse employment action(s) taken by Defendant as a result of Plaintiff going on protected leave (including, but not limited to, the right to be free from Defendant using Plaintiff's FMLA leave as a negative factor in determining the value of Plaintiff's annual bonus, in conducting a performance evaluation of Plaintiff, and in terminating Plaintiff).

41. Despite her history of positive job performance, in February 2012, shortly after going on protected leave in December 2011, Plaintiff received a markedly negative performance review for the first time, which resulted in a reduction in her annual bonus. Defendant used this performance review as a pretext to terminate Plaintiff while she was on protected leave.

42. By giving Plaintiff a pretextual negative performance evaluation, reducing her annual bonus and terminating her employment while she was on protected leave, Defendant unlawfully interfered with Plaintiff's rights under the DCFMLA to 1) take protected adoption leave, 2) retain any employment benefit or seniority accrued prior to going on protected leave

and 3) be restored to a position of employment equivalent to the position she held prior to going on protected leave.

43. In the alternative, Defendant's conduct constituted unlawful discrimination and retaliation against Plaintiff for attempting to avail herself of rights secured under the DCFMLA. There is a causal connection between Plaintiff's taking protected DCFMLA leave and Defendant's adverse actions against Plaintiff (which include, but are not limited to, Defendant's negative evaluation of Plaintiff, Defendant's reduction of Plaintiff's annual bonus and Defendant's termination of Plaintiff).

44. As such, Defendant's actions were willful, wanton, and undertaken with reckless disregard and indifference to the rights of Plaintiff.

45. As a direct and proximate result of said intentional acts, Plaintiff is entitled to all legal and equitable relief available under District of Columbia law, including, but not limited to, damages for a) wages, salary, employment benefits and compensation, or other compensation denied or lost to the Plaintiff due to Defendant's actions, plus interest on this amount, b) an amount equal to the greater of the amount determined under part a) or consequential damages not to exceed an amount equal to 3 times the amount determined in part a), plus any medical expenses not covered by Plaintiff's health insurance, **and** c) an award of costs and reasonable attorney's fees.

<b><u>COUNT II – VIOLATION OF THE DISTRICT OF COLUMBIA<br>HUMAN RIGHTS ACT<br>DISCRIMINATION</u></b>

46. Plaintiff incorporates and re-alleges paragraphs 1 through 45 of the Complaint as if fully set forth herein.

47. Defendant intentionally discriminated against Plaintiff in violation of the DCHRA by refusing to promote her to special counsel or partner, freezing her salary, and

reducing her annual bonus payments because of her age, sex and family responsibilities. Although counsel at WilmerHale are eligible for promotion to special counsel after two years, Plaintiff was not promoted despite working as counsel for just over four years and receiving multiple recommendations from her evaluating partners that she should be promoted.

48. Defendant also intentionally discriminated against Plaintiff in violation of the DCHRA by giving her a pretextual negative performance review in 2012 because of her age, sex and family responsibilities, which resulted in a reduction of her annual bonus, and then using that performance review as a pretext to terminate Plaintiff.

49. Defendant's actions were willful, wanton, and undertaken with reckless disregard and indifference to the rights of Plaintiff.

50. As a direct and proximate result of said intentional acts, Plaintiff is entitled to all legal and equitable relief available under District of Columbia law, including, but not limited to, reinstatement or upgrading of Plaintiff with back pay, or, in lieu of reinstatement, the provision of front pay, damages for loss of compensation and loss of other employment benefits, compensatory damages (e.g., damages related to emotional distress, humiliation, embarrassment, and damage to her reputation), and reasonable attorney's fees.

### COUNT III – VIOLATION OF THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT WRONGFUL DISCHARGE

51. Plaintiff incorporates and re-alleges paragraphs 1 through 50 of the Complaint as if fully set forth herein.

52. Defendant intentionally discriminated against Plaintiff in violation of the DCHRA by terminating her employment because of her age, sex and family responsibilities, despite her successful work performance.

53. Defendant's action was willful, wanton, and undertaken with reckless disregard and indifference to the rights of Plaintiff.

54. As a direct and proximate result of said intentional act, Plaintiff is entitled to all legal and equitable relief available under District of Columbia law, including, but not limited to, reinstatement or upgrading of Plaintiff with back pay, or, in lieu of reinstatement, the provision of front pay, damages for loss of compensation and loss of other employment benefits, compensatory damages (e.g., damages related to emotional distress, humiliation, embarrassment, and damage to her reputation), and reasonable attorney's fees.

## JURY DEMAND

Plaintiff hereby demands a trial by jury with respect to each claim in this Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests legal and equitable relief including:

a. a declaration that Defendant's conduct toward her was unlawful;

b. back pay with interest;

c. wages, salary, employment benefits and compensation, or other compensation denied or lost to the Plaintiff due to Defendant's actions, plus interest on this amount;

d. an amount equal to the greater of the amount determined under part (c) or consequential damages not to exceed an amount equal to 3 times the amount determined in part (c), plus any medical expenses not covered by Plaintiff's health insurance;

e. reinstatement or upgrading to the position Plaintiff would have enjoyed if not for Defendant's unlawful action or, in lieu thereof, front pay;

f. compensatory and punitive damages in the amount of five million dollars;

g. attorneys' fees and costs; and

    h.    any other relief this Court finds just or appropriate.

DATE: May 10, 2013                                          Respectfully submitted,

/s/ David Sanford
David Sanford, D.C. Bar No. 457933
Brandon Jamison, D.C. Bar No. 980043
**SANFORD HEISLER, LLP**
1666 Connecticut Avenue, N.W., Suite 300
Washington, D.C. 20009
Telephone: (202) 499-5200
Facsimile:  (202) 499-5199
dsanford@sanfordheisler.com
bjamison@sanfordheisler.com

*Counsel for Plaintiff*